UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANE INTERNATIONAL, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation; and HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation,<br><br>                Defendants | Case No. EDCV 06-1244 VAP(OPx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL |

This case was tried to the Court without a jury on December 2 and 10, 2008; the parties thereafter filed post-trial briefs and the Court deemed the matter submitted. Having considered all the evidence presented by the parties, as well as the argument and briefing by counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

**FINDINGS OF FACT**

1. Plaintiff Thane International, Inc. ("Thane") is a Delaware corporation whose principal place of business is in La Quinta, within the County of Riverside, California, within the Central District of California. Admitted Facts in Final Pretrial Conference Order ("PTCO Adm. Facts") ¶ 2.

2. Defendant Hartford Casualty Insurance Company ("Hartford Casualty") is an Indiana corporation whose principal place of business is in Connecticut. PTCO Adm. Facts ¶ 2. Defendant Hartford Fire Insurance Company ("Hartford Fire") is a Connecticut corporation whose principal place of business is in Connecticut. <u>Id.</u>

**A.    The Insurance Policies**

3. Hartford Casualty issued Plaintiff a "Special Multi-Flex Policy" of insurance that included commercial general liability coverage for the period August 1, 2000 to August 13, 2001. PTCO Adm. Facts ¶ 5(a).

4. Hartford Fire issued Plaintiff a "Special Multi-Flex Policy" of insurance that included commercial general liability coverage for the period August 13, 2001 to August 13, 2002. PTCO Adm. Facts ¶ 5(b).

5. Both the Hartford Casualty and the Hartford Fire policies contained the following provision for coverage for "personal and advertising injury": "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' or 'advertising injury' to which this insurance does not apply. PTCO Adm. Facts ¶ 5(c).

6. The Hartford Casualty policy also stated: "This insurance applies to (1) 'Personal injury' caused by an offense arising out of your business. . . ." PTCO Adm. Facts ¶ 5(d).

7. The Hartford Casualty policy defined "personal injury" as "injury, other than 'bodily injury', arising out of one or more of the following offenses: . . . Oral, written, or electronic publication, including unauthorized access, of material that violates a person's right of privacy[.]" PTCO Adm. Facts ¶ 5(f). The Hartford Fire policy

defined "personal injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . Oral, written or electronic publication, including unauthorized access, of material that violates a person's right of privacy[.]" PTCO Adm. Facts ¶ 5(f).

**B.    Thane's Marketing of the "Strike Jacket EFL"**

8.  In 1995, Christopher Atkins, an actor, invented a fishing lure called the "Strike Jacket E.F.L. (Extreme Fishing Lure) ("EFL") that was designed "to look and behave like a real fish in the water." PTCO Adm. Facts ¶ 5(i), (j). In approximately October 1996, Atkins formed a corporation known as Rocky River Outdoor Products, Inc. corporation to develop the EFL for sale.   Exh. 26 at ¶¶ 12, 14.

9.  IMT and Rocky River allegedly entered into an oral agreement for the former to manufacture and market the EFL; the marketing effort was to include the production and release of an infomercial using Atkins's name and likeness.   PTCO Adm. Facts ¶ 5(k), (l).  The EFL product packaging displayed Atkins's name and likeness.

10. IMT allegedly entered into a separate agreeement with Thane, "transfer[ring] the EFL project to Thane" under terms that conflicted with IMT's agreement with Rocky River.  PTCO Adm. Facts ¶ 5(m).

11. In the first six months of 2001, Thane purchased more than 100,000 units of the EFL product from Sekwang Fishing International in South Korea for a total price of $501,010.02, or $5.01 per unit.  PTCO Adm. Facts ¶ 5(w).

12. Thane sold the EFL at both retail and wholesale levels.  It sold the EFL units on a wholesale basis for $11.00 apiece.  It sold the EFL units on a retail basis at varying price levels, from $39.90 plus $6.95 for shipping charges to $19.95 plus $6.95 in shipping charges.  Exh. 128, 132.

**C.     The Underlying Lawsuit**

13.  On August 17, 2001, Interactive Marketing Technology, Inc. ("IMT") filed suit in the California Superior Court for the County of Los Angeles against Christopher Atkins and Rocky River Outdoor Products, Inc. ("Rocky River").  PTCO Adm. Facts  ¶ 5(g).

14.  On February 7, 2002, Rocky River and Atkins filed a cross-complaint ("the Atkins Cross-Complaint") naming, among others, Plaintiff Thane as a cross-defendant. PTCO Adm. Facts ¶ 5(h).  The Cross-Complaint alleged that Atkins' Company, Rocky River, entered into an oral agreement with IMT for the latter to manufacture and market the EFL; marketing was to include development and production of an infomercial.  PTCO Adm. Facts ¶ 5 (k), (l).  IMT allegedly entered into a separate agreement with Thane, "transfer[ing] the EFL project to Thane" under terms that conflicted with IMT's agreement with Rocky River.  PTCO Adm. Facts ¶ 5(m).

15.  The Atkins Cross-Complaint alleged the use of Atkins's name and likeness to market the EFL without his permission, specifically:

   a.     "In or around February 2001, IMT showed Rocky River Outdoor Products, Inc. a modified version of the Atkins infomercial that IMT and/or Thane had aired without Rocky River Outdoor Products, Inc.'s review or approval and without a release from Atkins for the use of his name and likeness.  Rocky River Outdoor Products, Inc. viewed this infomercial, which was the third version of the infomercial, and disapproved of its contents that included a verbal announcement that Atkins personally selected and guarantees results of the [EFL] and use of the name 'Chris Atkins' and voiced many other objections it had with the infomercial.  Rocky River Outdoor Products, Inc. demanded that IMT remove this content from the infomercial and instead use the name 'Christopher Atkins' which was and is recognized throughout the world as Atkins' professional stage name.  Although the verbal announcements that Atkins personally selected and guarantees results of the

|   |   |   |
|---|---|---|
| | | [EFL] were deleted, the use of the name 'Chris Atkins' instead of 'Christopher Atkins' remained in the infomercial that was subsequently aired."  PTCO Adm. Facts ¶ 5(n), (o) (I); |
| | b. | "On August 23, 2001, an EFL infomercial aired on the Home Shopping Network using Atkins' name and likeness, without Rocky River Outdoors, Inc.'s and/or Atkins' approval or consent."   PTCO Adm. Facts ¶ 5(o)(ii); |
| | c. | "On October 26, 2001, counsel for Rocky River Outdoors, Inc. demanded that Thane cease and desist from using the EFL, Intellectual Property and Atkins' name and likeness, and to provide all documents and information in Thane's possession or control regarding Thane's accounting for all sales of the EFL.  To date, IMT and Thane continue to use the Intellectual Property and Atkins' name and likeness in marketing and selling the EFL without Rocky River Outdoors, Inc.'s and Atkins' consent and approval."   PTCO Adm. Facts ¶ 5(o)(iii); |
| 16. | | The Seventh Cause of Action in the Atkins Cross-Complaint alleged a claim against Thane and IMT for "Invasion of Privacy:  Misappropriation of Name and Likeness." PTCO Adm. Facts  ¶ 5(o)(iv).  It alleged: |
| | a. | "Without Atkins' valid authority or informed consent, IMT and Thane have invaded and continue to invade Atkins' privacy by appropriating Atkins' name and likeness by using Atkins' name and image on the EFL package and Atkins' name and image in at least one infomercial which was aired on television.  Atkins' image on the EFL package and in the infomercial is readily identifiable in that any person viewing these images with the naked eye can reasonably determine that the person depicted in these images is Atkins because Atkins' face is clearly visible and distinguishable, the image depicting Atkins on the EFL package is situated next to Atkins name on the |

|   |   |   |
|---|---|---|
| 1 |   | package and the image depicting Atkins in the EFL infomercial is shown with |
| 2 |   | a verbal statement of Atkins' name." PTCO Adm. Facts ¶ 5(o)(v); |
| 3 | b. | "As a result of the unauthorized use by IMT and Thane of Atkins' name and |
| 4 |   | likeness, Atkins has suffered and continues to suffer damages in an amount |
| 5 |   | which has not yet been ascertained but will be proven at trial." PTCO Adm. |
| 6 |   | Facts ¶ 5(o)(vi). |

17. The Atkins's Cross-Complaint's prayer for relief requested general, special, consequential and incidental damages for Atkins's "Invasion of Privacy" claim." PTCO Adm. Facts ¶ 5(p).

18. In discovery responses, Rocky River asserted that Atkins had suffered damages to his professional reputation as a result of Thane's alleged misappropriation of his name and likeness, in the amount of $7 million to $12 million, as well as general tort damages of $5 million to $7 million. Exh. 148.

19. In discovery responses, Atkins asserted that Thane had used his "name and likeness for commercial advantage without his valid consent during the period of about February 2001 until about August 2001." Exh. 148.

20. On March 5, 2002, Plaintiff tendered the defense of the cross-complaint to Hartford Casualty. Hartford Casualty denied coverage by letter dated June 7, 2002. PTCO Adm. Facts ¶ 5(r), (s); March 15, 2008 Order Granting Plaintiff's Motion for Partial Summary Judgment ("3/15/08 Order") at 12.

**D.  Settlement of the Underlying Lawsuit**

21. On November 15, 2002, all parties to the underlying lawsuit entered into a settlement agreement and general release, resolving all claims in the Complaint and Cross-complaint, including Atkiins's invasion of privacy claim. PTCO Adm. Facts ¶ 5(t), 5(v). The parties did not allocate any amount of consideration paid under the

6

|   |   |   |
|---|---|---|
| 1 |   | settlement agreement to any claim in the Complaint or Cross-complaint in the |
| 2 |   | underlying lawsuit. |
| 3 | 22. | The settlement of the underlying lawsuit was made in good faith and was not a |
| 4 |   | result of fraud or collusion.  The settlement was reasonable in light of all the facts |
| 5 |   | and circumstances. |
| 6 | 23. | The terms of the settlement agreement required Thane to "cause to be delivered" |
| 7 |   | approximately 100,000 of the manufacturing EFL fishing lures to Rocky River, a |
| 8 |   | term defined by the settlement agreement to include Atkins.  PTCO Adm. Facts, ¶ |
| 9 |   | 5(u); Exh. 104, 104A  ("This Settlement Agreement and Release (the "Agreement") |
| 10 |   | is entered into as of November 15, 2002, by and between Interactive Marketing |
| 11 |   | Technology, Inc., a Nevada corporation and Sandy Lang (collectively "IMT"); |
| 12 |   | Christopher Atkins, aka Christopher Bowman; Craig E. Shinners; Pamela Biren; and |
| 13 |   | Rocky River Outdoor, Inc., a Nevada corporation (collectively "Rocky River"); Thane |
| 14 |   | International, Inc., a Delaware corporation; and William Hay (collectively "Thane").") |
| 15 | 24. | On or about December 26, 2002 and January 27, 2003, Thane delivered 98,362, or |
| 16 |   | "approximately 100,000," EFL fishing lures to Rocky River, as directed by the |
| 17 |   | Settlement Agreement.  PTCO Adm. Facts ¶¶ 5(x), 5(y). |

**E.     Damages Suffered by Thane**

25.   Thane retained the law firm of Slovak, Baron & Empey  ("SBE") to defend it against the claims alleged in the Atkins cross-complaint in the underlying lawsuit.  SBE responded to the Cross-complaint, propounded discovery and eventually negotiated a resolution of all claims against Thane.  For these services, Thane incurred reasonable and necessary legal fees and costs of $107,182.20 to defend against the claims in the Atkins Cross-complaint.  Exhs. 24, 26-28 (pleadings in underlying case), 76-89 (law firm invoices), 89-90 (ADR invoices), 91-103, 146 (Thane payments).

26. Thane delivered approximately 100,000 EFL units to the Rocky River parties as consideration for settlement of the claims against it in the Atkins Cross-complaint. PTCO Adm. Facts ¶¶ 5(x), 5(y). Although Thane had sold the EFL Strike Jacket at both retail and wholesale levels, at prices ranging from $39.90 to $11.00, the evidence of those sales revealed them to be sporadic in nature, and thus insufficient to support a finding that the fair market value of the EFL units deliver to the Rocky River parties fell within that range. Exh. 128, 132. It is uncontroverted, however, that Thane paid $5.01 for the EFL units it commissioned to be manufactured in Korea. PTCO Adm. Facts ¶ 5(w). The fair market value of the non-monetary consideration paid by Thane to settle the claims against it in the underlying lawsuit was $492,793.62, or $5.01 per unit for the 98,362 units transferred.

## II. CONCLUSIONS OF LAW

**A.  Jurisdiction**

1. The Court has jurisdiction over this action under its diversity jurisdiction, 28 U.S.C. § 1332 (a). Personal jurisdiction exists over Defendants because they contracted with Plaintiff, a resident of Riverside County. Venue is properly laid in the Central District of California under 28 U.S.C. § 1391 because Defendants Hartford Casualty and Hartford Fire transact business in this District.

2. The events giving rise to this action occurred within the jurisdiction of the Central District of California, and the Court applies California substantive law to resolve the claims alleged. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); St. Paul Fire and Marine Ins. Co. v. Weiner, 606 F.2d 864, 867 (9th Cir. 1979) (applying California substantive law for an action brought in a district court in California pursuant to its diversity jurisdiction); State Farm Mut. Auto. Ins. Co. v. Khoe, 884 F.2d 401, 405 (9th Cir. 1989) (applying California substantive law to breach of insurance contract action).

**B.     Breach of Contract**

3. A plaintiff seeking to recover for breach of contract must prove (1) the existence of the contract; (2) the plaintiff's performance under the contract or excuse for any nonperformance; (3) the defendant's breach of the contract; and (4) the resulting damages suffered by the plaintiff.  CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

**C.     Breach of the Duty to Defend, by Hartford Casualty**

4. Thane proved, by a preponderance of the evidence, each of the elements of its claim against Defendant Hartford Casualty for breach of contract, i.e., breach of its duty to defend.  See 3/15/08 Order at 26; Finding of Fact Nos. 26, 27 (Thane's damages), above.

**D.     Breach of the Duty to Defend, by Hartford Fire**

5. Thane proved the existence of the contract, see ¶ ¶ I (4), (5) above, and their own performance thereunder, see PTCO Adm. Facts ¶ 5(a), (b).

6. Thane also proved the third element of its breach of contract claim against Hartford Fire, breach by the defendant when it denied the tender of defense of the Atkins cross-complaint in the underlying lawsuit.   The cross-complaint's invasion of privacy claim alleged Thane used Atkins's name and likeness, without authorization, on the Home Shopping Network on August 23, 2001,  PTCO Adm. Facts ¶ 5(o)(ii), and Atkins testified at trial in this case that this use formed part of the basis for his invasion of privacy claim; denial of defense.  Thus, by denying Thane's tender of defense on the cross-complaint, Hartford Fire breached its duty to defend its insured.

**E.     Affirmative Defenses**

7. In the Final Pretrial Conference Order, Defendants explicitly stated that they did "not plan[]o to pursue any affirmative defenses."  PTCO p. 19.  The Pretrial Conference Order supersedes the pleadings and controls the course of the litigation thereafter.  Fed. R. Civ. P. 16(d); Northwest Acceptance Corp. v. Lynnwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir. 1988).  "A defendant must enumerate its defenses in a pretrial order even if the plaintiff has the burden of proof."  El-Hakem v. BJY Inc., 415 F.3d 1068, 1077 (9th Cir. 2005) (citation omitted); Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., 795 F.2d 1501, 1507 (9th Cir.1986) (failure to raise argument in pretrial conference order or at trial was waiver); Southern Cal. Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1264 (9th Cir.1984) (failure to include issue in pretrial order constituted waiver, even though raised earlier in the proceeding).  Accordingly, Defendants have waived the defenses they belatedly attempt to raise in their post-trial briefing, i.e., the policy exclusions for "prior publication" and "intellectual property" and the exclusion for insureds in the business of telecasting or advertising. (See Hartford Fire's Closing Argument Brief at 1.)

**F.  Damages**

8. A plaintiff in a breach of contract suit has the burden of proving its damages by a preponderance of the evidence. Carpenter Foundation v. Oakes, 26 Cal. App. 3d 784, 799-800 (1972); Cal. Civ. Code § 3301.

9. Thane's reasonable attorney's fees and costs of $107,182.20 incurred in defending the underlying suit are recoverable as damages arising from Hartford Casualty's and Hartford Fire's breach. Marie Y. v. General Star Indem. Co., 110 Cal. App. 4th 928, 960-61 (2003); Aerojet-General Corp. v. Transport Indem. Co., 17 Cal. 4th 38,

|   |   |   |
|---|---|---|
| 1 |   | 64 (1997); State v. Pacific Indem. Co., 63 Cal. App. 4th 1535, 1548 (1998). |
| 2 |   | Defendants are jointly and severally liable to Thane for this amount. |
| 3 | 10. | Defendants breached their duty to defend Thane. Accordingly, as the Court has found that at least some of the causes of action in the Atkins Cross-Complaint potentially were covered under the Hartford Casualty and Fire policies, "this triggered [Hartford's] contractual duty to defend claims potentially covered. . . Its *prophylactic* duty required it to defend the entire action, even if not all claims were potentially covered. . . [The insurer's] argument that its duty to defend should be apportioned with its insured . . . is contrary to California law." State v. Pacific Indem. Co., 63 Cal. App. 4th at 1548; citations omitted; emphasis in original. |
| 11. |   | Defendants' contention that they are entitled to "reimbursement" for expenses incurred in connection with the defense of, and settlement payment for, non-covered claims, lacks merit. Id; see also Buss v. Superior Court, 16 Cal. 4th 35, 48-50 (1997). Defendants breached their duty to defend their insured, and thus did not incur any expenses in defending the covered (and uncovered) claims in the Atkins cross-complaint in the underlying lawsuit. Hence, there is no basis on which they could seek "reimbursement": unlike the insurers in the authorities which they rely upon, they did not expend any funds but rather, their breach of contract forced their insured to do so and to seek reimbursement through the means of this action. For example, in Buss, the insurer had cross-complained against its insured seeking reimbursement for expenses related to non-covered claims; no such counterclaim was filed here nor does an affirmative defense preserve this claim. See ¶ II (7) above (affirmative defenses waived). Furthermore, even if Defendants were entitled to seek "reimbursement" in the form of a set-off against Thane's damages, Defendants have not met their burden of proving by a preponderance of the evidence the portion of the settlement amount attributable to any noncovered claim. Buss, 16 Cal. 4th at 53-54. |

1  64 (1997); State v. Pacific Indem. Co., 63 Cal. App. 4th 1535, 1548 (1998).
2  Defendants are jointly and severally liable to Thane for this amount.

3  10. Defendants breached their duty to defend Thane. Accordingly, as the Court has
4  found that at least some of the causes of action in the Atkins Cross-Complaint
5  potentially were covered under the Hartford Casualty and Fire policies, "this
6  triggered [Hartford's] contractual duty to defend claims potentially covered. . . Its
7  *prophylactic* duty required it to defend the entire action, even if not all claims were
8  potentially covered. . . [The insurer's] argument that its duty to defend should be
9  apportioned with its insured . . . is contrary to California law." State v. Pacific
10 Indem. Co., 63 Cal. App. 4th at 1548; citations omitted; emphasis in original.

11 11. Defendants' contention that they are entitled to "reimbursement" for expenses
12 incurred in connection with the defense of, and settlement payment for, non-
13 covered claims, lacks merit. Id; see also Buss v. Superior Court, 16 Cal. 4th 35,
14 48-50 (1997). Defendants breached their duty to defend their insured, and thus did
15 not incur any expenses in defending the covered (and uncovered) claims in the
16 Atkins cross-complaint in the underlying lawsuit. Hence, there is no basis on which
17 they could seek "reimbursement": unlike the insurers in the authorities which they
18 rely upon, they did not expend any funds but rather, their breach of contract forced
19 their insured to do so and to seek reimbursement through the means of this action.
20 For example, in Buss, the insurer had cross-complained against its insured seeking
21 reimbursement for expenses related to non-covered claims; no such counterclaim
22 was filed here nor does an affirmative defense preserve this claim. See ¶ II (7)
23 above (affirmative defenses waived). Furthermore, even if Defendants were entitled
24 to seek "reimbursement" in the form of a set-off against Thane's damages,
25 Defendants have not met their burden of proving by a preponderance of the
26 evidence the portion of the settlement amount attributable to any noncovered claim.
27 Buss, 16 Cal. 4th at 53-54.

12. The fair market value of the goods, i.e., the EFL units, or $492,793.62, that Thane agreed to relinquish in consideration for the settlement of all claims against it in the underlying lawsuit is recoverable as damages arising from Defendants' breach. Earth Elements, Inc. v. Nat'l Am. Ins. Co. of Calif., 41 Cal. App. 4th 110, 116-17 (1995); McMahan's of Santa Monica v. City of Santa Monica, 146 Cal. App. 3d 700-701 (1983), disapproved on other grounds, Bunch v. Coachella Valley Water Dist., 15 Cal. 4th 432 (1997).  Accordingly, Defendants are jointly and severally liable to Thane for this amount.

13. Whether or not the goods (the EFL units) Thane delivered to Rocky River Outdoor Products, Inc., as directed under the terms of the Settlement Agreement, ever came into Atkins's possession is of no consequence, contrary to Defendants' contentions. Anchor Cas. Co. v. Sur. Bond Sav. & Loan Ass'n, 204 Cal. App. 2d 175, 181 (1962); Cal. Civ. Code § 1605; Creamery Package Mfg. Co. v. Bennett, 48 Cal. App. 706, 709 (1920).  Plaintiff has suffered damages of $2,158,825.31 as a result of Defendant's breach of the express duty to defend provision.

**G.     Prejudgment Interest**

14. "In a diversity case, state law controls the award or denial of prejudgment interest." Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 64 F.3d 1282, 1291 (9th Cir. 1995) (citing Landsberg v. Scrabble Crossword Game Players, Inc., 802 F.2d 1193, 1200 (9th Cir. 1986).

15. California Civil Code section 3287 governs the award of prejudgment interest in this action.  Subsection (a) of that statute provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ."   Under California law, subsection (a) applies when "damages are considered certain or capable of being made certain,"

12

|     |     |
| --- | --- |
|     | that is, "'where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their disputes center on the issue of liability giving rise to damage.'" Safeway Stores, 64 F.3d at 1291 (citing Fireman's Fund Ins. Co. v. Allstate Ins. Co. 234 Cal. App. 3d 1154, 1173 (1991). The damages suffered by Thane in this action, its attorneys fees and the value of the goods paid in settlement of the underlying lawsuit, fit squarely within this description of "certain or capable of being made certain."  Furthermore, to the extent Defendants claim that their contention that the defense fees and costs, or the value of the settlement, were "not certain" because of the claim for allocation of noncovered claims, that argument lacks merit.  The Ninth Circuit rejected an analogous contention in Safeway Stores when it found "unpersuasive" the insurer's argument that its liability might later be reduced if the court allocated the indemnification amounts later. Id. |
| 16. | Hence, as a result of Defendants' breach of their duty to defend, Thane is entitled to prejudgment interest at the legal rate of 10% on $107,182.20, the amount of its defense costs and fees from the date incurred. Cal. Civ. Code § 3289. |
| 17. | As a further result of Defendants' breach of their duty to defend, Thane is entitled to prejudgment interest at the legal rate of 10% on $492,793.62, the fair market value of the goods that Thane relinquished in consideration for the settlement of all claims against it in the underlying litigation, from the date incurred. Cal. Civ. Code § 3289. |

**IT IS SO ORDERED.**

*Virginia A. Phillips*

13

**Dated:**     **February 19, 2009**

_____
**VIRGINIA A. PHILLIPS**
**United States District Judge**